Wanamaker, J.,
dissenting. I dissent from the judgment of the majority in this cause, and the,reasons therefor, upon the following grounds.
It is conceded that the particular constitutional provision involved is Section 7, Article XII of the Constitution of Ohio, as adopted in 1912. That section reads:
“Laws may be passed providing for the taxation of the right to receive, or to succeed to, estates, and such taxation may be uniform or it may be so graduated as to tax at a higher rate the right to receive, or to succeed to, estates of larger value than to estates of smaller value. Such tax may also be levied at different rates upon collateral and direct inheritances, and a portion of each estate not exceeding twenty thousand dollars may be exempt from such taxation.”
It is apparent that the word “estate” appears four times in this section. The majority, in the first *312 paragraph of the syllabus, hold that, “The word ‘estate’ in the last clause thereof imports the same meaning as the word ‘estates’ in the first clause of the section. ’ ’ That is, the word ‘ ‘ estate, ’ ’ wherever it appears in Section 7, Article XII as adopted in 1912, has the same meaning.
I agree, with the qualification that the context itself clearly shows that the one subject-matter dealt with in that section of the constitution is the property left by a deceased person to be administered either according to his will or agreeable to the law of distribution. The first part of the section obviously relates only to a portion, a moiety, a fractional part of the whole estate, such as a legacy, a devise, or bequest, while in the last clause, as well as in the next preceding clause, the word “estate” is used as an entirety. Yet, in substance, the word “estate” as used in Section 7 relates to the decedent’s property before distribution.
For the purpose of this argument, however, I shall accept and adopt the view of the majority as to the word “estate” being identical throughout Section 7. If this be sound, then “Harvard College’s right to receive or to succeed to estates” must be subject to the last clause of that section, reading “and a portion of each estate not exceeding twenty thousand dollars may be exempt from such taxation.”
It will be observed that the statute in question (Section 5332, General Code), under which the exemption is claimed, is found in 94 Ohio Laws, 101, enacted before the adoption of the constitutional amendment of 1912. By virtue of the express sched • ule of the constitution, as well as by the implied rule of law governing all statutes in effect at the time of *313 the adoption of any new constitutional amendment, in so far as such statute is in conflict with the later constitutional amendment the statute must fall.
This elementary doctrine has been too frequently announced by this court to require any citation, and the majority opinion admits the soundness of this contention as to the necessity of repeal wherever the old statute and the new constitution conflict.
The old statute (Section 5332, General Code; 94 O. L., 101) under which Harvard College claims exemption, so far as pertinent, is as follows:
“The provisions of the next preceding section shall not apply to property, or interests in property, transmitted to the state of Ohio under the intestate laws of the state, or embraced in a bequest, devise, transfer or conveyance to, or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning # # *. The property, or interests in property so transmitted or embraced in such devise, bequest, transfer or conveyance shall be exempt from all inheritance and other taxes while used exclusively for any of such purposes.”
I candidly concede the validity of that statute before the constitutional amendment of 1912 here in question. Prior to that amendment the question of exemption, or exclusion, or exception, by whatsoever name called, was one for. the legislature.
But after the amendment, the legislature was by the constitution limited to “a portion of each estate not exceeding twenty thousand dollars may be exempt from such taxation.”
*314 Ael elementary rule of construction recognized by substantially all courts, as well as text-writers, is that the federal constitution is primarily a grant of power, and, secondarily, a limitation upon power; while state constitutions are primarily limitations of power, and secondarily grants of power.
It is obvious in this case that the sovereign people of Ohio, through their political will dealing with the subject of exemptions from such taxation, have placed a limit upon the legislative discretion, beyond which the legislature may not go. Else what could-be the purpose or effect of the constitutional limitation?
It is self-evident that the doctrine of uniformity in taxation, taxation upon all property equally, has been the primary and paramount doctrine in the principle of Ohio taxation. Exceptions, exemptions, and the like, are not favored in the law, and are therefore to be strictly construed; especially after general words which would naturally and necessarily include the exception if the exception were not expressly exempted from the operation of the law.
Layman as well as lawyer reading this provision of the constitution would unhesitatingly say that the legislature may pass an estate tax, but when they undertake to apply it they must apply it equally to all estates and to each and every part thereof, save and except they may exempt “not exceeding twenty thousand dollars. ”-
By this construction, as used in this case as a principle of statutory and constitutional interpretation, general assemblies may, by the use of appropriate words as an exception or exclusion, instead of the exact literal word “exemption,” thus permit a stat *315 utory provision to defeat the plain, palpable constitutional provision.
I protest against such skin-deep superficialities. What a constitution exempts, a statute may not include, and what a constitution includes, a statute may not exempt, else the constitution is hot the paramount, sovereign law.
It is an elementary rule of legal construction applicable to a new statute, and especially to a new constitutional provision, that in order to obtain a clear, correct and comprehensive view of the changes contemplated by the new law- it is necessary to first consider the state of the old law. The old Blackstonian rule of the old law, the mischiefs thereunder, and the provisions of the new law for the correction of the same, are always essential to correct interpretation and application of the new order.
Section 5331, General Code (94 O. L., 101), stated the old law under the Constitution of 1851, and Section 5332 specified the exemptions under such statute, among which exemptions the following should be noted:
1. The succession to any property passing to or for the use of the state of Ohio.
2. Or for the use of a municipal corporation or other political subdivision of the state, for exclusively public purposes.
3. Public institutions of learning.
4. Property or interests in property transmitted to or for the use of an institution in the state for purposes only of public charity, or other exclusively public purposes.
It will be observed that these four classes are total exemptions under the old law of 1900, that had -been *316 in force for twelve years or more prior to the Constitution of 1912.
Now, with that state of the law before the constitutional convention and before thé people of Ohio at the time of the election in September, 1912, the new amendment relating to taxation, and especially Section 7, Article XII, was adopted.
I contend that by this Section 7 they wiped out entirely all total exemptions such as enumerated in these four classes. With the subject of exemptions before them, as is shown by the language of the section, it is to be presumed that the constitutional fathers said upon that subject what they wanted to say, and when they defined the exemption that should be allowed they meant it as a restrictive definition beyond which the general assembly might not go.
Had the members of the constitutional convention wanted to exclude public charity, public institutions of learning, or any political subdivision of the state, or any other beneficiary, would they not likely have enumerated such beneficiary in connection with the subject of exemptions? Instead of that, all the. exemption they allowed or permitted, as to present and future legislation, is expressed in Section 7, “and a portion of each estate not exceeding $20,000 may be exempt from such taxation.”
Now it must be conceded that this $20,000 limitation is a limitation as to what may be exempt as to each particular inheritance by devise, legacy, trust, etc., in which no more than $20,000 could be exempted by the legislative act.
Or, such limitation must apply to the estate as a whole, as an entirety, in which event the whole estate *317 would be subject to the tax, with the right of the legislature to exempt “not exceeding $20,000.”
Or, a third meaning is possible, which is that it means just nothing at all, and that is the force and effect that this court has given it.
The majority opinion uses this language:
“And, since the validity of these inheritance tax-exemption laws is attacked for unconstitutionality, we may be permitted to quote the language employed by Judge Banney in Cincinnati, Wilmington & Zanesville Rd. Co. v. Commissioners of Clinton County, 1 Ohio St., 77, 82, and Exchange Bank of Columbus v. Hines, 3 Ohio St., 1, 52, as follows: ‘The presumption is always in favor of the validity of the law; and it is only when manifest assumption of authority, and clear incompatibility between the constitution and the law appear, that the judicial power can refuse to execute it. Such interference can never be permitted in a doubtful case.’ ”
This is a 100 per cent, sound proposition of law, but it bears 99 10/10 per cent, of non-applicability to this case. This statute falls, not because it was unconstitutional at the time of its enactment, but because it was repealed by the new constitutional amendment; and as Chief Justice Shauck soundly declared in the Lynch case, 88 Ohio St., 71, even a constitutional schedule was not necessary to effect the repeal of a former statute in clear conflict with the new constitutional provision, but the old statute ipso facto was repealed by reason of the new constitutional provision where inconsistent therewith.
This is a case of putting the right boot on the wrong foot. It is a question not of unconstitution *318 ality, but of repeal of tbe old statute, clearly intended by the new constitution dealing with exemptions.
Suppose the wording of the constitutional amendment dealing with exemptions contained in substance this language: “but no exemptions shall be allowed.” What then becomes of the old exemption statute here involved? Is there a lawyer or a layman who understands elementary English that would claim that an old exemption statute, in face of such later constitutional provision, could possibly remain in force?
Now, the new constitutional provision did not contain that language. It did allow some little latitude for exemptions; but limited that latitude to “a portion # * * not exceeding twenty thousand dollars may be exempt.”
The most that could possibly be claimed in favor of the Harvard College bequest, upon any possible statute, is that of the $73,000 they were to receive under the will $20,000 thereof was exempt, else this court writes $73,000 into the constitution of Ohio instead of $20,000. There is no alternative if ordinary language has any meaning or conveys understanding. And yet this court exempts the entire $73,000.
From the foregoing I hold that the whole exemption statute passed before the constitutional amendment, being clearly inconsistent with it because of its inconsistent and conflicting provisions, must absolutely fall, expressly and impliedly fall, because the schedule provided that prior inconsistent laws should be repealed.
Of course it was impossible for the legislature prior to 1912 to anticipate what constitutional changes might thereafter be made, and the very fact *319 that the legislation in no wise recognizes the $20,000 limit on exemptions shows that the exemptions, not the tax, fall, and it is np to the general assembly if it sees fit to keep its exemptions within the new constitutional provisions.
I hold that this interpretation is not only clearly and convincingly consistent with the language itself, but I am confirmed in this respect by the constitutional debates, which are casually mentioned in the majority opinion.
On page 1506 of the constitutional debates, the following appears:
“Mr. Harris, of Ashtabula: As I understand, in the inheritance tax you provide for an exemption of $20,000. Is that an exemption to each heir, or each estate?
“Mr. Colton: Each estate, not each heir.
“Mr. Harris, of Ashtabula: What is meant by the language: ‘A portion of each estate not exceeding twenty thousand dollars in value may be exempted from such tax?’
“Mr. Colton:. I do not know that I can make it any plainer than that language. Not exceeding $20,-000 may be exempted from the estate, and the remainder must be taxed.
“Mr. Harris, of Ashtabula: The inheritance tax heretofore attempted has provided where the individual share exceeded such an amount it should be taxed.
“Mu. Colton: This is not worded in that way.
“Mr. Partington: Would the general assembly have the right to make a difference where there was a direct heir, or where there was one or ten heirs, in the setting aside of that portion?
*320 “Mu. Colton: No.
“Mb. Partington: The legislature would not be empowered to do that under this provision?
“Mr. Colton: I think not, under this provision. Those are provisions in which the two reports concur, and I do not think it is necessary to go very carefully over those.” (Referring to both the majority and minority report.)
I might well submit this dissent upon the language of the amendment, together with the debates of the constitutional convention, which are entirely consistent with the language of the inheritance provision.